**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**CASE NO.: 1:24-cv-07884**

CCSA, LLC,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

        Defendants.

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff CCSA, LLC. ("CCSA" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendants, the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto[1] (collectively "Defendants"), who are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district through various Internet based e-commerce stores using the seller identities as set forth on Schedule "A" hereto (the "Seller IDs"), and in support of its claims, alleges as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this action for federal trademark counterfeiting and infringement, false designation of origin, removal of copyright management information, common law

---

[1] The Schedule "A" to this Complaint will be initially filed under seal, after this Honorable Court rules by granting Plaintiff's Motion to Seal Certain Documents Containing Identifying Information About the Defendants, that will be submitted as soon as the case is opened, and the Judge is assigned.

trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Illinois' Uniform Deceptive Trade Practices Act (815 ILCS § 510, *et seq.*)

2.      Plaintiff brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq.*, and The All Writs Act, 28 U.S.C. § 1651(a).

3.      Plaintiff brings this action for willful design patent infringement under 35 U.S.C. §271 committed in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented design, within the United States or for importation into the United States any patented design during the term of the patent-in-suit, and for all the remedies available under 35 U.S.C. §§ 283, 284, 285, and 289.

## SUBJECT MATTER JURISDICTION

4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

5.      This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 301.

6.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

7.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the

United States, including within the state of Illinois and this district, through at least the internet-based e-commerce stores accessible in Illinois and operating under their Seller IDs.

8.     Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Illinois cause plaintiff injury in Illinois, and Plaintiff's claims arise out of those activities.

9.     Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## **VENUE**

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not resident in the United States and therefore there is no district in which an action may otherwise be brought.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1400(a) because Defendants or their agents are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §1400(b) because Defendants or their agents reside in this judicial district or have committed acts of infringement and have a regular and established place of business in this judicial district.

3

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## THE PLAINTIFF

14.     CCSA is a California Corporation with its principal place of business in **[REDACTED]**.

15.     CCSA is the maker of the **[REDACTED]**.

16.     CCSA products are sold through hundreds of authorized retailers in the United States and many countries like **[REDACTED]**.

17.     CCSA owns the trademarks, copyrights, and design patent described below that are the subject of this action in United States; as well registrations claiming protection for the product **[REDACTED]** design features in **[REDACTED]**, following the scope of its commercial activities extended outside the United States.

18.     Plaintiff offers for sale and sells its products within the state of Illinois, including this district, and throughout the United States.

19.     Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

20.     Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

21.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

22.     The recent explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brands.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A. PLAINTIFF'S TRADEMARK RIGHTS

**23.** Plaintiff created and sells unique patented **[REDACTED]** under the federally registered trademarks **[REDACTED]** (collectively the "CCSA Marks"), including the first **[REDACTED]**. **[REDACTED].**

24. Plaintiff is the owner of all rights in and to the CCSA Marks **[REDACTED]** (Standard Characters) for **[REDACTED]** shown in the table below.

### [REDACTED]

25. The CCSA Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office and shown in Composite Exhibit 1.

26. The **[REDACTED]** Marks are incontestable.

27. The CCSA Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality and unique patented **[REDACTED]**.

28. The CCSA Marks are displayed directly on top of Plaintiff's products and on different sides of the packaging used for selling the products. Shown below are the CCSA Marks as they are used in relation with Plaintiff's products and its packaging.

### [REDACTED]

29. The CCSA Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality and unique patented **[REDACTED]** for an extended period of time.

30. The CCSA Marks have been used by Plaintiff long prior in time to Defendants' use of copies of those trademarks.

31.     The CCSA Marks have never been assigned or licensed to any of the Defendants.

32.     The CCSA Marks are a symbols of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

33.     Plaintiff has carefully monitored and policed the use of the CCSA Marks.

34.     The CCSA Marks are well known and famous (as that term is used in 15 U.S.C. §1125(c)(1)) and have been for many years.

35.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the CCSA Marks in connection with Plaintiff's products. Plaintiff's average marketing and promotional investments are over $225,000 per year.

36.     Plaintiff has extensively used, advertised, and promoted the CCSA Marks in the United States in association with the sale of high-quality and unique patented **[REDACTED]**.

37.     Plaintiff has spent substantial resources promoting the CCSA Marks and **[REDACTED]** bearing or sold under those marks.

38.     Sales of products bearing or sold under the CCSA Marks generated $1.6M (USD) in 2021.

39.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the CCSA Marks as being high-quality and unique patented **[REDACTED]** sponsored and approved by Plaintiff.

40.     Accordingly, the CCSA Marks have achieved secondary meaning as identifiers of high-quality and unique patented **[REDACTED]**.

41.     Genuine **[REDACTED]** bearing or sold under the CCSA Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

42.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

43.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

44.     Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the CCSA Marks.

### B.     PLAINTIFF'S COPYRIGHT RIGHTS

45.     Plaintiff advertises, markets, promotes, and sells its products under CCSA Marks using photographs, videos, and through a website that are protected by copyright and registered with the Copyright Office (collectively the "Works").

46.     Plaintiff's photographs are duly registered with the Register of Copyrights as visual materials as shown in the table below. True and correct copies of the Certificates of Registration and the photographs they apply to are attached hereto as Composite Exhibit 2.

### [REDACTED]

47.     Plaintiff's videos are duly registered with the Register of Copyrights as entire motion pictures as shown in the table below. True and correct copies of the Certificates of Registration are attached hereto as Composite Exhibit 3.

### [REDACTED]

48.     Plaintiff's website content comprising photographs and text, **[REDACTED],** is duly registered with the Register of Copyrights under the Registration **[REDACTED]**. A true and correct copy of the Certificate of Registration and the content it applies to is attached hereto as Exhibit 4.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

49. The copyrighted photographs, videos, and the website content claimed as copyrightable subject matter show Plaintiff's high-quality and unique patented **[REDACTED]**.

50. Genuine **[REDACTED]** bearing or sold under the CCSA Marks are widely legitimately advertised and promoted by Plaintiff and its authorized distributors using Plaintiff's copyrighted photographs, videos, and through its website content.

51. Plaintiff has never granted authorization to anyone to advertise, market, or promote unauthorized goods using Plaintiff's copyrighted photographs, videos, or website content.

## C.    PLAINTIFF'S PATENT RIGHTS

52. Plaintiff's **[REDACTED]** design features are protected under a design patent and registered with the United Stated Patent and Trademark Office under U.S. Patent No. **[REDACTED]**. A true and correct copy of U.S. Design Patent Registration is attached hereto as Exhibit 5 (the "Design Patent").

53. The Design Patent relates to the ornamental design for **[REDACTED]** as shown and described through four figures corresponding and ordering in front, top, bottom and side views, in which the rear view of the design is identical to the front view and both side views are identical each other.

54. The Design Patent was registered on **[REDACTED]**, has not expired, and is valid.

55. Plaintiff marked its products with a Patent Notice.

56. Plaintiff has never granted authorization to anyone to import, make, use, or sell unauthorized goods using the Design Patent.

**DEFENDANTS**

57. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

58. Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

59. Defendants are engaged in business in Illinois but have not appointed an agent for service of process.

60. Upon information and belief, Defendants have registered, established or purchased, and maintained their Seller IDs.

61. Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

62. Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiff's intellectual property rights as described herein operating and using at least the Seller IDs.

63. Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff.

64.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Illinois through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

65.     Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

66.     Upon information and belief, many Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

67.     Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale counterfeits and infringements of Plaintiff's intellectual property rights unless preliminarily and permanently enjoined.

68.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

69.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

70.     Some of the Defendants use individual seller store names containing the CCSA Marks, and these store names are indexed on search engines and compete directly with Plaintiff for space in search results.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

71. The appearance of Defendants' individual seller stores in search engine results undermines Plaintiff's efforts to educate consumers about the value of products sold under the CCSA Marks

72. Defendants are using counterfeits and infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

73. Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Illinois and causing Plaintiff harm and damage within this jurisdiction.

74. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' intellectual property rights and the destruction of the legitimate market sector in which it operates.

75. Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER

76. Defendants are the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto.

77. Defendants are promoting, selling, offering for sale and distributing goods bearing identical or confusingly similar imitations of Plaintiff's intellectual property within this district.

78. Joinder of all Defendants is permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to

or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all Defendants will arise in the action.

79.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto is permitted because Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

80.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiffs, Defendants, and this Court.

81.     Joinder of the multiple Defendants listed in Schedule "A" attached hereto will not create any unnecessary delay nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike.

82.     Joinder of the multiple Defendants listed in Schedule "A" is procedural only and does not affect the substantive rights of any defendant listed on Schedule "A" hereto.

83.     This Court has jurisdiction over the multiple Defendants listed in Schedule "A" hereto. Venue is proper in this court for this dispute involving the multiple Defendants listed in Schedule "A" hereto.

84.     Plaintiff's claim against the multiple Defendants listed in Schedule "A" are all transactionally related.

85.     Plaintiff is claiming counterfeiting, infringement, and piracy of Plaintiff's licensed intellectual property rights by Defendants.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

86. The actions of all Defendants cause indivisible harm to Plaintiff by Defendants' combined actions engaging in similar counterfeiting and infringing conduct when each is compared to the others.

87. All Defendants' actions are logically related. All Defendants are all engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions.

88. All Defendants undertake efforts to conceal their true identities from Plaintiff in order to avoid detection for their illegal activities.

89. All Defendants are located in foreign jurisdictions, mostly China.

90. All Defendants undertake efforts to conceal their true identities from Plaintiff in order to avoid detection for their illegal counterfeiting and infringing activities.

91. All Defendants have the same or closely related sources for their counterfeit and infringing products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain counterfeit and infringing products from the same upstream sources.

92. All Defendants take advantage of a set of circumstances the anonymity and mass reach the internet affords to sell counterfeit and infringing goods across international borders and violate Plaintiff's licensed intellectual property rights with impunity.

93. All Defendants have registered their Seller IDs with a small number of online platforms for the purpose of engaging in counterfeiting and infringement.

94. All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

95.    All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their illegal activities.

96.    All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event their efforts are discovered or Plaintiff obtains a monetary award.

97.    All Defendants violated one or more of the Plaintiff's licensed intellectual property rights in the United States, by the use of common or identical methods.

98.    All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

99.    Many of the Defendants are operating multiple internet storefronts and online marketplace seller accounts using different Seller IDs listed on Schedule "A". As a result, there are more Seller IDs than there are Defendants, a fact that will emerge in discovery.

100.    Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their infringement scheme and cause harm to Plaintiff.

101.    Defendants are using infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

102. Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Illinois and causing Plaintiff harm and damage within this jurisdiction.

103. The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiffs' licensed intellectual property rights and the destruction of the legitimate market sector in which it operates.

104. Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## DEFENDANTS' INFRINGING ACTIVITIES

105. Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's **[REDACTED]** in interstate commerce that are counterfeits and infringements of Plaintiff's intellectual property rights (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

106. Specifically, Defendants are using one or more of the CCSA Marks to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs.

107. Defendants are using identical copies of one or more of the CCSA Marks for different quality goods.

108. Plaintiff has used the CCSA Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

109. Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods.

110.    Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality and unique patented **[REDACTED]** offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the CCSA Marks.

111.    Defendant's counterfeit **[REDACTED]** reproduce the main design features of the Design Patent, as is shown in the Claim Chart attached hereto as Exhibit 6.

112.    The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale on Defendants' e-commerce stores are genuine goods originating from, associated with, and approved by Plaintiff.

113.    Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

114.    In so advertising their stores and products, Defendants improperly and unlawfully use the CCSA Marks and the copyrighted Works without Plaintiff's permission.

115.    As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the CCSA Marks and the copyrighted Works.

116.    Specifically, Defendants are using counterfeits and infringements of one or more of the Marks in order to make their e-commerce stores selling illegal goods appear more relevant

and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

117. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

118. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the CCSA Marks, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

119. Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

120. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

121. Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the CCSA Marks, the copyrighted Works and the Design Patent, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

122. Defendants use one or more of the CCSA Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

123. Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.

124. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

125. Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

126. Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

127. Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting and infringing, and their unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores or seller identification names being used and/or controlled by them.

128. Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

129. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Plaintiff's intellectual property rights.

130.     If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

131.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

132.     Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

133.     Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's trademarks, copyrights and patent.

134.     Plaintiff has no adequate remedy at law.

## <u>COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)</u>

135.     Plaintiff incorporates the allegations of paragraphs 1 through 134 of this Complaint as if fully set forth herein.

136.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of one or more of the CCSA Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

137.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the CCSA Marks.

138.     Defendants are continuously infringing and inducing others to infringe one or more of the CCSA Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

139.    Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

140.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

141.    Defendants' above-described illegal actions constitute counterfeiting and infringement of one or more of the CCSA Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

142.    Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

143.    If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

## <u>COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))</u>

144.    Plaintiff incorporates the allegations of paragraphs 1 through 134 of this Complaint as if fully set forth herein.

145.    Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of one or more of the CCSA Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

146.    Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the CCSA Marks are virtually identical in appearance to Plaintiff's genuine goods.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

147.    Defendants' Counterfeit Goods are different in quality from Plaintiff's goods, and are of much lower quality.

148.    Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

149.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress and Plaintiff's own marketing photographs, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

150.    Defendants have authorized infringing uses of one or more of the CCSA Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

151.    Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

152.    Defendants are using counterfeits and infringements of one or more of the CCSA Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

153.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

154.    Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

155.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III – VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

### (815 ILCS § 510, et seq.)

156.     Plaintiff incorporates the allegations of paragraphs 1 through 134 of this Complaint as if fully set forth herein.

157.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiff, causing a likelihood of confusion as to the source of their goods, causing a likelihood of confusion as to an affiliation, connection, or association with genuine Plaintiff's products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion among the public.

158.     The foregoing acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

159.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and associated goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

160.     Plaintiff incorporates the allegations of paragraphs 1 through 134 of this Complaint as if fully set forth herein.

161.    This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing or sold under one or more of the CCSA Marks.

162.    Plaintiff is the owner of all common law rights in and to the CCSA Marks.

163.    Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of one or more of the CCSA Marks.

164.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing or sold under one of more of the CCSA Marks.

165.    Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT V – COPYRIGHT INFRINGEMENT

166.    Plaintiff incorporates the allegations of paragraphs 1 through 134 of this Complaint as if fully set forth herein.

167.    Plaintiff has complied in all respects with the Copyright Act of the United States and all other laws governing copyright and secured the exclusive rights and privileges in and to the copyrights at issue in this action.

168.    Pursuant to 17 U.S.C. § 411 (a), Plaintiff registered its copyrights for its advertising and marketing photographs, videos, and website content.

169.    Defendants directly infringed Plaintiff's exclusive rights in its copyright registered advertising and marketing photographs, videos, and website content under 17 U.S.C. § 106.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

170. Defendants copied, displayed, and distributed Plaintiff's copyrighted Works and/or prepared derivative works based upon Plaintiff's copyrighted Works in violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1), (2) and/or (5).

171. Defendants' conduct constitutes willful and direct copyright infringement of Plaintiff's copyrighted Works.

172. Defendants profited from the direct infringement of the exclusive rights of Plaintiff in the Works at issue in this case under the Copyright Act.

173. Defendants' infringement is not limited to the copyright infringement listed above. Plaintiff will identify such additional infringement after discovery.

174. On information and belief, there is a business practice of infringement by Defendants.

175. Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

176. Plaintiff has been damaged by the infringement.

177. The harm to Plaintiff is irreparable.

178. Plaintiff is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

179. Plaintiff is entitled to recover its actual damages and/or statutory damages, at its election.

180. Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in this action.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## COUNT VI – REMOVAL OR FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION

181.    Plaintiff incorporates the allegations of paragraphs 1 through 134 of this Complaint as if fully set forth herein.

182.    The Copyrighted Works all contained copyright management information (CMI) as defined by 17 U.S.C. § 1202 including the © symbol, the name of the plaintiff, the title and authorship information for the Works, and other identifying information for the work and plaintiff.

183.    Defendants knowingly and with the intent to enable or facilitate copyright infringement removed CMI from the works at issue in this action, or distributed the works knowing that the CMI had been removed, in violation of 17 U.S.C. § 1202(b).

184.    Alternatively, Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided copyright management information that is false.

185.    Defendants committed these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of plaintiff's rights in the works at issue in this action protected under the Copyright Act.

186.    Defendants caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate or conceal infringement of plaintiff's rights in the works at issue in this action protected under the Copyright Act.

187.    Plaintiff has been damaged.

188.    The harm caused to plaintiff has been irreparable.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## COUNT VII – PATENT INFRINGEMENT

189.    Plaintiff incorporates the allegations of paragraphs 1 through 134 of this Complaint as if fully set forth herein.

190.    Plaintiff has the exclusive rights on Design Patent **[REDACTED]**, claiming the design features of its **[REDACTED]**.

191.    Defendants have infringed and continue to infringe the Design Patent either directly or indirectly through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271, by making, using, selling, importing and/or offering to sell infringing products, namely the infringing and counterfeit products sold under one or more of the CCSA Marks.

192.    Defendants infringing and counterfeit products sold under one or more of the CCSA Marks are the same in all material respects.

193.    Defendants' infringement, contributory infringement and/or inducement to infringe has injured Plaintiff and it, therefore, is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

194.    Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendants have notice of or knew of the Design Patent and have nonetheless injured and will continue to injure Plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products that come within the scope of the Design Patent.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against defendants as follows:

a.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C.

§ 1116, 17 U.S.C §§ 502 and 503, and Federal Rule of Civil Procedure 65

enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the CCSA Marks; from using the CCSA Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the CCSA Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff; from copying,

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

displaying, distributing or creating derivative works of Plaintiff's copyrighted Works.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the CCSA Marks, that copy, display, distribute or use derivative works of Plaintiff's copyrighted Works.

c.      Entry of an order authorizing seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. §503.

d.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the CCSA Marks.

e.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

f.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods bearing counterfeits and/or infringements of the CCSA Marks via the e-commerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the CCSA Marks associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the CCSA Marks.

g.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

and sequester all goods of each Defendant bearing the CCSA Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

h.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that Facebook (and its parent company Meta), and all online shopping cart software providers the Defendants are using to advertise, promote and sell their counterfeit goods, shall immediately (i) identify all financial accounts and subaccounts associated with the Defendants and the Facebook Advertisers listed in Schedule "B" to the Complaint; (ii) identify all Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses corresponding to each one of the Facebook Advertisers listed on Schedule "B" to the Complaint; (iii) restrain the transfer of all funds of said Facebook Advertisers, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; (iv) immediately divert those restrained funds to a holding account for the trust of the Court; (v) provide Plaintiff's counsel the complete contact information including email addresses, links and/or any other data serving as identifiers, associated with each Facebook Advertiser; (vi) remove all Facebook Ads using the CCSA Marks, the copyrighted Works, and the Design Patent to promote the sale of counterfeit CCSA products; and (vii) during the pendency of this case, prohibit the Facebook Advertisers listed on Schedule "B" to the Complaint from posting advertisements on Facebook that use the CCSA Marks, the copyrighted Works, and the Design Patent, or any colorable imitations thereof.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

i.     Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

j.     Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

k.     Entry of an Order requiring defendants to pay Plaintiff for all profits and damages resulting from Defendant's violations of 17 U.S.C. § 1202 or statutory damages (at Plaintiff's election) per violation, for which Defendants shall be liable in a sum per violation of not less than $2,500 or more than $25,000 per violation pursuant to 17 U.S.C. §1203.

l.     Entry of an Order requiring Defendant to account to and pay Plaintiff for all profits and damages resulting from Defendant's copyright infringement, or statutory damages (at Plaintiff's election), for all infringements involved in the action, with respect to any one work, for which Defendant is liable in a sum of not less than $750 or more than $30,000 as the Court considers just pursuant to 17 U.S.C. §504(c)(1), or to the extent the Court finds that infringement was

committed willfully, an award of statutory damages to a sum of not more than $150,000 per violation, pursuant to 17 U.S.C. §504(c)(2).

m.      Entry of an Order requiring Defendant to account to and pay Plaintiff damages for patent infringement in an amount to be determined by the Court pursuant to 35 U.S.C. § 284 which shall in no event be less than a reasonable royalty.

n.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b), as well as 17 U.S.C. §§ 504 and 1203 of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

o.      Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

p.      Entry of an award of pre-judgment interest on the judgment amount.

q.      Entry of an Order for any further relief as the Court may deem just and proper.

DATED: August 29, 2024                     Respectfully submitted,

                                           */s/ Joel B. Rothman*_____
                                           JOEL B. ROTHMAN

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Florida Bar Number:  98220
joel.rothman@sriplaw.com
J. CAMPBELL MILLER
Illinois Bar Number: 6345233
campbell.miller@sriplaw.com
ANGELA M. NIEVES
Florida Bar Number:  1032760
angela.nieves@sriplaw.com

**SRIPLAW, P.A.**
231 S. Rangeline Rd.
Carmel, IN 46032
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff*