**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| BETTY'S BEST, INC., <br><br>                  Plaintiff, <br> V. <br><br> THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br>               Defendants. | CASE NO.: 1: 24-cv-07884 <br><br> Honorable Thomas M. Durkin <br> Magistrate Judge: Jeffery T. Gilbert |

## DEFENDANTS' MOTION TO CERTIFY ISSUES FOR APPEAL

NOW COME Defendant Nos. 218 (invaluablte.com), 229 (ortasthard.com), 236 (relstidvtion.com), 244 (sutcalibrat.com), 248 (toknforaerd.com), 251 (transmissioni.com), 254 (wedgcatious.com), 221 (lirecteracy.com), 230 (outerimoest.com), 247 (tematically.com), 220 (invisiblen.com), 182(alongsidem.com), 187 (backgroundi.com), 224 (nicebelie.com), 226 (niowatchted.com), 223 (metallicn.com), 255 (well-infacemall.com), collectively, "Defendants" by and through their undersigned attorneys, hereby move to certify the following issues for appeal pursuant to 28 U.S.C. § 1292(b): (1) whether the District Court has personal jurisdiction over Defendants and (2) whether the service of process on Defendants was proper, following the Court's decision on those issues in Order [Dkt. 117].

## ARGUMENT

Defendants respectfully request the Court to certify the following issues in its order [Dkt. 117] for appeal pursuant to 28 U.S.C. § 1292(b): (1) whether the Court has personal jurisdiction over Defendants, and (2) whether the service to Defendants via email is proper. Defendants

respectfully request that the court amend its order, or separately certify these issues for appeal, affirming that the District Court is of the opinion that its Order [Dkt. 117] involves the two aforementioned controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

A motion to certify an issue for interlocutory appeal is governed by 28 U.S.C. § 1292(b). An interlocutory appeal is proper when: (1) the appeal presents a question of law; (2) it is controlling; (3) it is contestable; (4) its resolution will expedite the resolution of the litigation, and (5) the petition to appeal is filed in the district court within a reasonable amount of time after entry of the order sought to be appealed. *Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1007 (7th Cir. 2002). The two issues presented are proper for an interlocutory appeal.

**A. Service of Process via Email**

*1. Question of Law (first element) and contestability (third element)*

The "question of law" as used in section 1292(b) refers to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine. *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 676 (7th Cir. 2000). That is, it is "an abstract legal issue" or "a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Trs. of Univ. of Ill*, 219 F.3d 674, 677 (7th Cir. 2000).

An issue is contestable if there is a "difficult central question of law which is not settled by controlling authority," and there is a "substantial likelihood" that the issue will be reversed on appeal. *Lysengen v. Argent Tr. Co.*, No. 20-1177, 2024 U.S. Dist. LEXIS 82947, at *7 (C.D. Ill. May 6, 2024). A contestable issue also arises if there is conflicting authority on the issue. *Id*.

2

This appeal presents a question of law that is contested: whether service via email to Chinese entities is proper under the Hague Convention. The Court of Appeal is able to determine the issue by analyzing the application of the Hague Convention in similar situations in general, without specifically analyzing the record of this case. District courts in this Circuit have reached different opinions on this issue. *Compare Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019) (finding China's objections preclude email service), *with Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 347 F.R.D. 316, 330 (N.D. Ill. 2024) (finding the Hague Convention does not prohibit service by email).

There is a substantial likelihood that the issue will be reversed on appeal. Specifically, Fed. R. Civ. P. 4(f) states in relevant part that an individual "may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Federal Rule of Civil Procedure 4(f)(3) explicitly states that service may be effected by other means so long as they are "not prohibited by international agreement." Therefore, **the central question is whether service via e-mail is "not prohibited by international agreement."**

Article 5 of the Hague Convention provides:

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –
a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.
Subject to sub-paragraph (b) of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily. If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed. That part of the request, in the form attached to the present Convention, which contains a summary of the document to

be served, shall be served with the document.

      Article 8 of the Hague Convention provides:

Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents. Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate. Article 9 of the Hague Convention provides: Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose. Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

      Article 9 of the Hague Convention provides:

Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose. Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

      Article 10 of the Hague Convention provides:

Provided the State of destination does not object, the present Convention shall not interfere with –
a) the freedom to send judicial documents, by postal channels, directly to persons abroad[1],
b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

      Article 11 of the Hague Convention provides:

The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

---

[1]China opted out of Section (a) of Article 10 by filing an objection. See https://www.usmarshals.gov/what-wedo/service-of-process/civil-process/hague-convention-service-abroad.

The plain texts of the Hague Convention make it very clear how the Hague Convention is structured.

*First*, the authorized method of service of process is specified under Article 5 by service through a "Central Authority." *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 275, 137 S. Ct. 1504, 1508 (2017) (finding that "[t]he primary innovation of the Hague Service Convention...is that it "requires each state to establish a central authority to receive requests for service of documents from other countries"); *see Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1392 (S.D.N.Y. 2022).

*Second*, each "Contracting State" is permitted to allow additional methods of service specified under Article 8 (service through diplomatic and consular agents), Article 9 (service through consular channels), Article 10 (service through postal channels and judicial officers), and Article 11 (other methods of service mutually agreed upon). *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 275–76 (2017); *Smart Study Co. v. Acuteye-US*, 620 F.Supp.3d 1382, 1392 (S.D.N.Y. 2022); *Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.,* 480 F.Supp.3d 977, 980 (N.D. Cal. 2020).

Accordingly, the only "other means" of service of process "not prohibited by [the Hague Convention]" that a court may order pursuant to R. Civ. P. Rule 4(f)(3) is limited to means of service allowed under Article 8, Article 9, and Article 10.

A country which *wishes* to permit service via email may do so pursuant to Article 11 which authorizes contracting states to voluntarily adopt "channels of transmission other than those provided for in the preceding Articles." *See Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1394 (S.D.N.Y. 2022) ("Articles 11 and 19 provide ready tools to permit countries to expressly

permit service by email. And those articles would be largely superfluous if litigants could serve a party in another country merely by selecting a method that is not expressly listed in the Hague Convention—there would be no need for articles that permit countries to agree to other methods of service, or to legislate to affirmatively authorize other methods of services.").

Service via email is explicitly prohibited by China. *E.g.*, *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1392 (S.D.N.Y. 2022); *Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.*, No. 2:19-cv-109-FtM-38UAM, 2019 U.S. Dist. LEXIS 178264 (M.D. Fla. Mar. 15, 2019). Alternative service to Chinese entities cannot exceed the boundaries set by these rules.

China formally objected to Article 10, which permits service by postal channels, when it joined the Hague Convention in 1991.[2] At that time, most Chinese people - if not all - did not have access to computer networks or email. Over time, China has made it clear that such objection extends to email service as well. *E.g.*, *Smart Study*, 1392-95. The Ministry of Justice of the People's Republic of China has publicly clarified that service via electronic mail to a person in China is invalid based on its reservation under Article 10 of the Hague Convention. *See* [Dkt. 74-1], The Department of The Ministry of Justice of the People's Republic of China, *Frequently Asked Questions on International Civil and Commercial Judicial Assistance*. Additionally, the most recent case that has carefully considered China's position on email service observed that, "[r]ecent guidance posted by Supreme People's Court of China leaves little doubt that China's objection to service by mail would encapsulate service by email." *Smart Study*, at 1395; *also*, *Kyjen Co., LLC v. Individuals*, 2023 U.S. Dist. LEXIS 16408, *6 (S.D.N.Y. Jan. 31, 2023).

---

[2] Hague Conference on Private International Law, *Status Table: China – Declaration/Reservations under the Hague Service Convention*, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn&utm (last visited on April 3, 2025).

Furthermore, on June 24, 2022, the Supreme People's Court posted the Minutes of the National Symposium on Foreign-related Commercial and Maritime Trial Work of Courts (the "Meeting Minutes"), where Article 11 states: "When a People's Court serves a judicial document … in the event that the country where the person to be served is located is a member state of the Hague Convention and objects to the service by mail under the Hague Convention, it shall be presumed that the country does not allow electronic service, and the people's court shall not adopt electronic service."[3] The Supreme People's Court formally stated that an objection to service by postal channels includes an objection to service by email. The Meeting Minutes reflects a directive by the Supreme People's Court's that service by email is invalid because China objected to service by mail under the Hague Convention, and such objection would encapsulate service by email.

In conclusion, adequate authorities support that email service to Chinese entities is inappropriate, leading to a substantial likelihood of reversal on appeal.

### 2. Controlling issue (second element) and advance litigation (fourth element)

The second and fourth factors are met because the issue of law is determinative of the litigation. For an issue to be controlling, it must be likely to affect the course of the litigation that save time and expense for the district court. *Lysengen v. Argent Tr. Co.*, No. 20-1177, 2024 U.S. Dist. LEXIS 82947, at *8 (C.D. Ill. May 6, 2024); *see also Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656 (7th Cir. 1996). For an interlocutory appeal to materially advance the litigation, it must move the case forward, speed up, or lead to the ultimate termination of the litigation. *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 676 (7th Cir. 2000). Here, the question of

---

[3] China International Commercial Court, *Provisions on Judicial Matters*, Supreme People's Court of China, https://cicc.court.gov.cn/html/1/218/62/409/2172.html (last visited on April 3, 2025).

7

law is dispositive of the litigation because jurisdiction is fundamental to this litigation. A decision favoring Defendants will definitively dispose of the litigation.

### 3. *The motion to certify is timely (fifth element)*

There is no statutory deadline for the filing of the petition in the district court—the only requirement is that interlocutory appeal be filed within a reasonable time. *Lysengen v. Argent Tr. Co.*, No. 20-1177, 2024 U.S. Dist. LEXIS 82947, at *9 (C.D. Ill. May 6, 2024). The motion is timely because the Court entered its order on April 1, 2025, Defendants filed this motion to certify on April 4, 2025.

### B. Lack of Personal Jurisdiction

The Court should also certify the issue of whether it has personal jurisdiction over Defendants for appeal pursuant to 28 U.S.C. § 1292(b). The appropriateness of exercising personal jurisdiction in this situation presents a pure question of law that is controlling and material to the outcome of litigation. There is a substantial likelihood of reversal on appeal.

As the Supreme Court of the United States has held, due process requires that a defendant be haled into court in a forum State based on its own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts it makes by interacting with other persons affiliated with the State. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Minimum contact cannot be established by the "unilateral activity" of a plaintiff. *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

Many circuit courts have concluded that merely operating a website that is accessible from the forum does not even constitute "purposeful availment" required under the "minimum contacts" requirement. As held by the Fourth Circuit in *Fidrych v. Marriott Intl., Inc.*, 952 F.3d 124, 141-42 (4th Cir. 2020), that a "website makes itself available to any one who seeks it out, regardless of

where they live" does not constitute "targeting its activities at that state." Similarly in *Admar Int'l, Inc. v. Eastrock, L.L.C*, 18 F.4th 783, 785 (5th Cir. 2021), the Fifth Circuit held that defendant's website which "receives purchases, allows customers to create accounts, and accepts product reviews" did not allow the Court to exercise personal jurisdiction because "[m]erely running a website that is accessible in all 50 states[] that does not specifically target the forum state, is not enough to create the 'minimum contacts' necessary to establish personal jurisdiction in the forum state." Other circuit courts that have held this way include the Ninth and Eleventh Circuits. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013).

The Seventh Circuit has also repeatedly held that Courts "should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state" and that it takes more than "simply operating an interactive website that is accessible from the forum state" for the exercise of personal jurisdiction to be constitutional. *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (quoting *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010)). In *be2*, defendant was a New Jersey resident who ran an interactive matchmaking website "be2.net." *Id*. at 556. Plaintiff alleged that defendant's website was confusingly similar to plaintiff's which was "be2.com." *Id*. Defendant's website had 20 users from Chicago who created their profiles on be2.net. *Id*. In that case, the Seventh Circuit held the defendant did not avail himself of the privilege of doing business in Illinois despite his dating website operating in Illinois, holding that "the miniscule number of registrants" was "not sufficient to show conduct targeted at the state." *Id*. at 559; *see also Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an 'interactive

website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'").

Exercising jurisdiction in this situation would offend traditional notions of fair play and substantial justice. Neither Plaintiff nor Defendants are Illinois companies. Defendants No. 218, 221, 226, 229, 230, 236, 251, and 254 have made no U.S. sales. Defendants No. 182, 187, 220, 244, 247, and 248 made only one order of the alleged products in Illinois, which was procured by Plaintiff for purposes of establishing jurisdiction. Defendant No. 223 made two U.S. sales, and Defendant No. 255 made six U.S. sales; in each case, one of the sales was procured by Plaintiff for purposes of establishing jurisdiction. Defendant No. 224 made one U.S. sale. [Dkt. 93].

Further, as noted by Defendants in their motion to dismiss, all of the witnesses for each of the Defendants are physically located in China and it would be a significant burden for Defendants to defend themselves in this Court which is geographically located on the other side of the globe. Defendants also note that cottage industry of Schedule A cases that have exploded in this state consuming the attention and ability of Illinois courts to administer to cases brought by Illinois plaintiffs or against Illinois defendants.

The Seventh Circuit should find exercising jurisdiction inapposite in this situation despite its precedent *NBA Props. v. HANWJH*, 46 F.4th 614, 619 (7th Cir. 2022). Alternatively, this case presents an opportunity for the Seventh Circuit to revisit its *NBA Properties* decision. In *Xyz Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-cv-06471, 2022 U.S. Dist. LEXIS 10466, at *3 n.1 (N.D. Ill. Jan. 20, 2022), the District Court noted that one local firm had "filed more than 500 Schedule A cases in fewer than two years." This trend has exploded since *NBA Properties*. *See e.g.* Lex Machina, Schedule "A" Cases Continue to Rise in the Northern

10

District of Illinois, LexisNexis (Dec. 6, 2023), https://www.lexisnexis.com/community/insights/legal/lex-machina/b/lex-machina/posts/schedule-a-cases-continue-to-rise-in-the-northern-district-of-illinois. ("In 2023, 80 percent of all design patent cases filed against Schedule A defendants in the U.S. were filed in the Northern District of Illinois. These 127 design patent cases represent an 84 percent increase over 2022, when 69 cases were filed in that district."). The limited judicial resources of District Courts should not be squandered on cases where there are no sales made to any Illinois residents but for Plaintiffs' counsel.

Therefore, certifying the personal jurisdiction for appeal is proper.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court certify the two issues for appeal pursuant to 28 U.S.C. § 1292(b).

Dated: April 4, 2025

Respectfully Submitted,

By: /s/ Jacob Chen
Jacob Chen, Esq.
Email: jchen@dgwllp.com
DGW KRAMER LLP
45 Rockefeller Plaza, 20th Floor;
New York, NY 10111
Tel: (917) 983-2806

*Attorneys for Defendants No.* 218
(invaluablte.com), 229 (ortasthard.com), 236
(relstidvtion.com), 244 (sutcalibrat.com),
248 (toknforaerd.com), 251
(transmissioni.com), 254 (wedgcatious.com),
221 (lirecteracy.com), 230
(outerimoest.com), 247 (tematically.com),
220 (invisiblen.com), 182(alongsidem.com),
187 (backgroundi.com), 224 (nicebelie.com),

226 (niowatchted.com), 223 (metallicn.com),
255 (well-infacemall.com).